UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
SUNDRA FRANKS,

                  Plaintiff,

- against -

CITY OF NEW YORK, ET ANO.,

                  Defendants.
----------------------------------------------------------x

MEMORANDUM AND ORDER

13 Civ. 2261 (ILG) (MDG)

GLASSER, Senior United States District Judge:

       Plaintiff Sundra Franks ("Franks") brings this action against the City of New York ("City") and New York City Police Detective Richard Dinkle, in his individual capacity, ("Dinkle," and, together with the City, "Defendants"), alleging federal claims under 42 U.S.C. § 1983 for false arrest, malicious prosecution, excessive force, violation of equal protection, and municipal liability, and state law claims for assault, battery, and false arrest. Before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the motion is GRANTED.

## BACKGROUND

       The undisputed facts are as follows.[1] On July 2, 2011 at approximately 11:45 p.m., Dinkle and other members of the New York City Police Department ("NYPD") responded to a residential building at 251 Jersey Street in Staten Island after receiving a report of gun shots fired at the location. Defendants' Local Rule 56.1 Statement of Facts

---

[1] Franks has not complied with Local Civil Rule 56.1, which requires the parties to submit a statement of undisputed, material facts in connection with a motion for summary judgment ("Rule 56.1 Statement"). His Rule 56.1 Statement did not respond to Defendants' Rule 56.1 Statement and failed to adequately cite to the record to support each statement. See Local Rule 56.1 (b), (d). The Court will deem admitted specific statements in Defendants' Rule 56.1 statement that are properly supported with admissible evidence. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

1

("SOF") ¶ 3.  James Lee, a resident of 251 Jersey Street, was in his apartment that evening with his friend, Steven Clark.  Id. ¶ 7.  Before the gun shots were fired, Clark had gone outside to meet his girlfriend, Shaiesha Lewis.  Id.  After Clark left, Lee heard a commotion outside and upon opening his door saw Clark and two other men with guns running toward his apartment.  Id.  He recognized both men, who he later identified as Franks and "Halloween."  Id. ¶ 8.  He ran back inside, and through his upstairs window, observed Franks fire a gun toward his apartment.  Id. ¶ 9.

Clark told police that while he was waiting outside for his girlfriend, two black men approached and started pushing him.  Id. ¶ 10.  He escaped the men and ran back into Lee's apartment and heard approximately five gun shots.  Id.  He described one of the men as "very short, very dark skinned, scruffy face, skinny, wearing a white t-shirt, [and] jean shorts" and the other as "taller, medium skin color, medium build, no hair, wearing a blue shirt."  Id. ¶ 11.  Franks, who is dark-skinned, short, and skinny, fit Clark's physical description.  Id. ¶ 12.

Shaiesha Lewis told police that as she approached 251 Jersey Street to meet Clark, she saw two men trying to get into the residence.  Id. ¶ 13.  She described one of the men as wearing a white tank top and blue shorts.  DX D at 5.  She managed to enter the residence and heard gun shots.  Id.  At the time, her mother, Farida Lewis, was parking her car outside of 251 Jersey Street and saw a black man pointing a gun and shooting at the building.  SOF ¶ 14.  She did not see the shooter's face, but described him as wearing all black and having short braids.  Id.  Police recovered five shell casings in front of 251 Jersey Street.  Id. ¶ 5.  The front door of Lee's apartment revealed two bullet holes, and the window of his apartment revealed one bullet hole.  Id.

In the early morning of July 3, 2011, the officers transported Lee, Clark, Shaiesha and Farida Lewis to the 120th New York City Police Precinct ("Precinct") to view photo arrays.  See Dinkle Dep. at 92-93 (DX C).  On the way to the Precinct, Lee saw Halloween walking on the street and alerted the officers, who arrested him.[2]  SOF ¶ 15.  Franks was still at large.

At the Precinct, Dinkle prepared two photo arrays: one contained a photo of Franks and the other contained a photo of Halloween.  Id. ¶ 16.  He showed both photo arrays to the four eyewitnesses.  Lee identified Franks as the shooter, but the other witnesses did not.  Id. ¶¶ 18-19.  Based on Lee's identification, Dinkle issued an "Investigation Card," which notified other NYPD officers that Franks was wanted in connection with the shooting incident.  Id. ¶ 21.

On November 26, 2011, officers notified Dinkle that Franks had been arrested that morning for driving a vehicle in which was a loaded firearm.[3]  Id. ¶ 22; DX E, ¶ 15.  Franks was brought to the Precinct, where Dinkle arrested him on charges related to the July 2 shooting.  Id. ¶¶ 22-23.  On November 27, 2011, a complaint was filed in the Richmond County Criminal Court, which charged Franks with two counts of criminal possession of a weapon in the second degree and one count of reckless endangerment in the first degree, and he was arraigned that day.  Id. ¶ 24.  On July 2, 2012, all charges against him were dismissed after the complaining victims did not appear to testify before the grand jury.  Id. ¶ 25.

---

[2] The officers later identified Halloween as "S.D," whose full name is protected by N.Y. Crim. Proc. Law § 160.50, which mandates that a record of a criminal case be sealed when the defendant is acquitted of all charges or the case is dismissed.

[3] This charge was later dropped when another occupant of the vehicle confessed to ownership of the firearm.  SOF ¶ 22; Dinkle Decl. ¶ 17.

On April 15, 2013, Franks commenced this action. Dkt. No. 1. During his April 24, 2014 deposition, he testified that he was not making a discrimination claim or complaining about any City policy, and that he did not suffer physical injury as a result of the arrest. SOF ¶ 27. On July 25, 2014, Defendants' filed their motion for summary judgment. Dkt. No. 18. Franks filed his Opposition on September 26, 2014. Dkt. No. 21. Defendants replied on October 18, 2014. Dkt. No. 23.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. . . . A fact is material if it might affect the outcome of the suit under the governing law." Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010) (internal quotations and citations omitted). The moving party bears the burden of establishing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (quotation omitted).

## DISCUSSION

Franks did not oppose Defendants' motion for summary judgment with respect to his state law claims, federal claims against the City, and federal claims against Dinkle for excessive force and violation of equal protection. "Federal courts may deem a claim abandoned when a party opposing summary judgment fails to address the [movant's]

4

argument in any way." Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003). Accordingly, the Court dismisses these claims as abandoned. The remaining claims are against Dinkle for malicious prosecution and false arrest under § 1983.

Defendants argue that Dinkle is entitled to qualified immunity from the false arrest and malicious prosecution claims because he had probable cause to arrest Franks. See D. Mem. at 11-12. Police officers are shielded from suits for damages under § 1983, "unless their actions violate clearly established rights of which an objectively reasonable official would have known." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The right not to be arrested in the absence of probable cause is clearly established. See Lennon v. Miller, 66 F.3d 416, 423 (2d Cir. 1995). Although probable cause is ordinarily required to make an arrest, an officer will be entitled to qualified immunity if he can show that "arguable" probable cause existed: that is, either "(a) it was objectively reasonable for the officer to believe that probable cause existed [to arrest plaintiff]; or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Garcia v. Does, --- F. 3d --- No. 12-2634-cv, 2015 WL 737758, at *5 (2d Cir. Feb. 23, 2015).

The Court finds that there is no genuine dispute of fact that it was objectively reasonable for Dinkle to believe that he had probable cause to arrest Franks. "A positive photo identification by an eyewitness is normally sufficient to establish probable cause to arrest." Celestin v. City of New York, 581 F. Supp. 2d 420, 431 (E.D.N.Y. 2008). Lee identified Franks in a photo array as the man he observed shooting at his residence on July 2, 2011. Additionally, Clark's description of one of the gunmen matched Franks' physical characteristics and further corroborated Lee's identification. Thus, Defendants' have shown that Dinkle had at least arguable probable cause to arrest Franks, and he is

5

entitled to qualified immunity from the false arrest and malicious prosecution claims. See Graebe v. Falcetta, 726 F. Supp. 36, 38 (E.D.N.Y. 1989), aff'd, 946 F.2d 883 (2d Cir. 1991) (as with false arrest claim, the presence of "arguable probable cause" is a complete defense to an action for malicious prosecution).[4]

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment in favor of Defendants and close this case.

SO ORDERED.

Dated: Brooklyn, New York
May 20, 2015

/s/_____
I. Leo Glasser
Senior United States District Judge

---

[4] Additionally, he is entitled to qualified immunity from the malicious prosecution claim because he had no authority to commence and continue the criminal prosecution. See Harris v. Cnty. of Nassau, 581 F. Supp. 2d 351, 356 (E.D.N.Y. 2008).